```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ABDUS SALAAM MALIK, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 05-3901 (JBS/JS) |
| v. | **OPINION** |
| LEWIS HANNAH, et al., | |
| Defendants. | |

APPEARANCES:

Abdus Salaam Malik
#40863-050
F.C.I. Ray Brook
P.O. Box 9003
Ray Brook, NY 12977
    Plaintiff appearing
    <u>pro se</u>

Lewis Hannah, Esq.
1315 Walnut Street
Suite 1326
Philadelphia, PA 19107
    Defendant appearing
    <u>pro se</u>

Mark Cieslewicz, Esq.
OFFICE OF THE CITY ATTORNEY
City Hall
4th Floor - Suite 419
P.O. Box 915120
Camden, NJ 08101
    Counsel for Defendant
    City of Camden

**SIMANDLE**, District Judge:

    This case clearly illustrates that an attorney, sued by his former client for legal malpractice, cannot ignore his obligations to his ex-client or to the Court. This matter is presently before the Court on two motions by Plaintiff Abdus Salaam Malik ("Plaintiff") for default judgment pursuant to Rule 55(b)(2), Fed. R. Civ. P., against Defendant Lewis Hannah ("Defendant Hannah") [Docket Items 78 and 85], who has failed to file an answer or otherwise respond to Plaintiff's complaint and

amended complaints over four years of litigation and despite multiple Court orders.  Plaintiff alleges, and this Court had already found, that Defendant Hannah breached his duty to Plaintiff of reasonable legal representation by failing to initiate a civil lawsuit as requested within the limitations period for doing so.  For the reasons set forth below, the Court concludes that Plaintiff has sufficiently alleged that Defendant Hannah's negligence caused him harm such that default judgment is warranted and that the record supports entry of default judgment of $51,333.47, including prejudgment interest.

## I. BACKGROUND

### A. Facts

In support of his motion for default judgment, Plaintiff has submitted a sworn and signed declaration setting forth the following facts, along with a copy of his second amended complaint.[1]  Taken together, Plaintiff alleges the following facts: On March 28, 2003, City of Camden police officers entered Plaintiff's home without a valid warrant and beat him, leaving him permanently injured and unable to work and causing damage to his property.  (Pl. Decl., Docket Item 86, ¶¶ 2, 5.)  Police burst into Plaintiff's bedroom where Plaintiff was sleeping with his wife and six-month old son, restrained him with plastic

---

[1] The Court accepts as true Plaintiff's allegations only for the purposes of this default judgment motion.  The City of Camden, as the remaining Defendant not in default, is free to contest all these facts at trial.

restraints, and kicked him three times in the back, head, and neck, though Plaintiff never resisted the officers.  (Second Am. Compl. ¶ 14-17.)  Plaintiff's house was left "in total shambles, with personal property thrown about, broken or lost."  (Id. ¶ 24.)  In particular, the police destroyed several doors and broke some furniture.  (Id. ¶¶ 12-13.)  When Plaintiff asked the officers if they had a warrant, the officers stopped their misconduct, explained that they only had a body warrant to arrest Mr. Crump, and drove Plaintiff to the hospital.  (Id. ¶¶ 19-26.)  At the hospital, Plaintiff was treated for bruises, contusions, and a twisted neck and back.  (Id. ¶ 26.)  Plaintiff was given a neck brace and released.  (Id.)  Due to his injuries, Plaintiff was unable to keep his job at Catelli Brokers.  (Id. ¶ 47.)  According to Plaintiff, this incident led to approximately $2,500,000 in damages, of which $12,452.59 were medical costs.  (Pl. Decl., Docket Item 86, ¶ 5; Pl. Am. Mot., Docket Item 85, at 14.)

In April 2003, Plaintiff visited Defendant Hannah seeking legal counsel and, after explaining that he would take a contingency fee from any recovery, Hannah agreed to represent Plaintiff in an action against the individual police officers who allegedly assaulted him and the responsible government entity and to investigate the incident.  (Pl. Decl., Docket Item 86, ¶ 3.)  In August 2004, after Plaintiff was incarcerated on an unrelated matter, Hannah visited Plaintiff in jail and assured Plaintiff that "everything was being handled" and that his civil suit was

proceeding.  (Second Am. Compl. ¶ 27.)  Defendant Hannah did not fulfill any of his promises to Plaintiff.  He "did not investigate any facts, did not file a lawsuit [] on [Plaintiff's] behalf, and did not notify [Plaintiff] that a lawsuit had not been filed until after the statute of limitations had run on [Plaintiff's] claims."  (Pl. Decl., Docket Item 86, ¶ 3.)  In March 2005, Plaintiff received a letter from Defendant Hannah stating that Hannah would not represent Plaintiff in his civil action.  (Second Am. Compl. ¶ 38.)  In June 2005, Plaintiff's brother received the paperwork Plaintiff had left with Defendant Hannah.  (Id. ¶ 40.)

### B. Procedural History

On August 4, 2005, Plaintiff filed this action pro se against Lewis Hannah.  The Court's jurisdiction over Plaintiff's malpractice claim is based upon diversity of citizenship, 28 U.S.C. § 1332, and New Jersey law applies.  Plaintiff alleged that Hannah committed legal malpractice by failing to file a complaint on his behalf for more than two years after his March 28, 2003 incident, thereby permitting the statute of limitations to run on his claims.  Plaintiff filed his first amended complaint on November 14, 2005 and added the Camden County Prosecutor's Office and the Camden County Police Department.  On February 22, 2006, this Court issued an Opinion and Order denying Plaintiff's application to proceed in forma pauperis and dismissing sua sponte, pursuant to 28 U.S.C. § 1915, Plaintiff's

4

causes of action against the Camden County Defendants, finding that they were barred by the two-year statute of limitations [Docket Items 12 and 13]. The Court held, however, that Plaintiff could proceed with his state law legal malpractice causes of action against Hannah.

On June 19, 2006, Plaintiff filed a motion for reconsideration of the February 22, 2006 Opinion and Order, arguing that the statute of limitations should be tolled as to the Camden County Defendants. This Court's January 3, 2007 Opinion and Order granted Plaintiff's motion for reconsideration insofar as it tolled the statute of limitations for Plaintiff's claims against the Camden County Defendants. This Court held that equitable tolling should apply to Plaintiff's causes of action against these parties. Nevertheless, the Court dismissed Plaintiff's claims against the Camden County Defendants that were based solely on a theory of respondeat superior because this is not a proper basis to assert a valid claim against a municipal defendant.

Plaintiff filed a second motion for reconsideration on February 2, 2007, arguing that the Court should reconsider its January 3, 2007 Opinion and Order and grant him leave to amend his complaint to include two John Doe police officers. The Court denied Plaintiff's second Motion for Reconsideration in its March 2, 2007 Opinion and Order because Plaintiff failed to allege a change in controlling law, new evidence or legal error to warrant reconsideration. The Court also denied Plaintiff's request to

5

include claims against the John Doe police officers because (1) the claims against the John Doe police officers failed to relate back pursuant to Fed. R. Civ. P. 15(c) and were, therefore, untimely; and (2) it would be inappropriate to add fictitious defendants that still had not been identified after a year and a half of motion practice.  However, Plaintiff was granted permission to seek to amend his complaint "with any timely filed claims he may have."

Plaintiff thereafter filed a motion to amend on April 10, 2007, seeking to add, for the first time, the City of Camden and the Camden Police Department, as well as, for the second time, to add John Doe officers.  Judge Schneider granted the motion to amend to add the City of Camden.  The other parties were barred, but not on statute of limitations grounds.  To this date, Plaintiff has not named the individual officers whom he believed assaulted him.

Defendant Hannah has never responded to Plaintiff's complaints in this action.  On March 2, 2007, the Clerk of Court entered default against him.  On March 26, 2007, Plaintiff moved for default judgment, which eventually triggered Defendant Hannah's attention.  On April 13, 2007, Hannah moved to set aside the Clerk's entry of default and opposed the entry of default judgment.  On June 11, 2007, Plaintiff filed a motion for summary judgment, which of course, Defendant could not oppose until the Clerk's entry of default was removed.

In an Opinion and Order dated September 25, 2007, this Court

addressed these motions. In that decision, the Court explained that the default was a result of Defendant Hannah's negligence but that "allowing default to remain would be unfair" and, therefore, vacated the clerk's entry of default and denied the motion for default judgment. The Court also ordered Defendant Hannah to submit his opposition to Plaintiff's pending summary judgment motion within fourteen days from the entry of that Order.

Defendant Hannah never opposed Plaintiff's summary judgment motion. Nor did Hannah respond to Plaintiff's reasonable demands for discovery, which included requests for information about Defendant Hannah's investigation into the March 23, 2003 incident. On February 20, 2008, the Magistrate Judge granted Plaintiff's motion to compel Defendant Hannah to respond to Plaintiff's discovery requests. Defendant Hannah never complied with this order, leading the Magistrate Judge to enter another order on June 11, 2008 requiring Defendant Hannah to respond to Plaintiff's discovery requests by July 16, 2008. Defendant Hannah has never responded to Plaintiff's discovery requests, in direct defiance of two of the Magistrate Judge's orders.

On March 31, 2008, the Court granted Plaintiff's unopposed motion for summary judgment in part, "declaring liability for legal malpractice, that is, that Defendant [Hannah] breached a duty of reasonable legal representation that he owed to Plaintiff." Malik v. Hannah, No. 05-3901, 2008 WL 906353, at *3 (D.N.J. Mar. 31, 2008). The Court declined to grant summary

7

judgment against Defendant Hannah on the issue of whether his negligence caused Plaintiff any harm, finding that it was unclear how Defendant Hannah's negligence had caused Plaintiff harm.  Id.

On June 18, 2009, Plaintiff filed the first of the two motions for default judgment presently before the Court.  In response, the Court wrote to Plaintiff asking that he address the following question: "Whether Defendant Hannah's failure to file a timely complaint on your behalf has deprived you of the opportunity to pursue your complaint against the Camden County Prosecutor's Office and the Camden County Police Department when this Court in fact heard your claim and decided it on the merits on January 3, 2007?" [Docket Item 82].  On August 17, 2009, Plaintiff submitted an amended motion for default judgment, along with a sworn supporting declaration.  In his amended motion, Plaintiff clarified that Defendant Hannah caused him harm because (1) "Attorney-defendant Hannah's failure to investigate this case, or failure to disclose the facts of his investigation and the names of the individuals injuring [Plaintiff] on March 28, 2003, has caused [Plaintiff], whose [sic] proceeding pro se and from a jail-cell, to be unable to identify all individuals responsible for injuring Malik," and (2) Defendant Hannah's failure to litigate this case "has forced [Plaintiff] to proceed with this action pro se."  (Pl. Am. Mot., Docket Item 85, at 11.) In essence, Plaintiff argues that, but for Defendant Hannah's negligence, Plaintiff would have identified the proper parties in this action, including the individual police officers who

8

attacked him, and he would have succeeded on his claims against those individual officers.[2]

## II. DISCUSSION

Plaintiff seeks default judgment pursuant to Rule 55(b)(2), where Plaintiff and the Court have consistently served Defendant Hannah with all pleadings and orders, yet Defendant Hannah has refused to participate in this action. Rule 55 governs default proceedings and permits a plaintiff, following entry of default,[3] to seek default judgment against a defendant who fails to answer or otherwise response to the pleadings. Fed. R. Civ. P. 55(b). In contrast to a full proceeding on the merits, a plaintiff seeking default judgment can proceed with only limited proofs, for a consequence of entry of default "is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Comdyne I, Inc. v. Corbin,

---

[2] Plaintiff requests the following amounts in damages:
$2,000,000 for personal injuries
$12,452.59 in medical costs
$7,000 to $8,000 in property damage
$1,000,000 to $2,000,000 in lost claims against the unidentified City of Camden police officers
$1,000,000 in lost claims against the Camden County Police Department and Camden County Police Officers
$3,125 in "paralegal fees"
$250 in filing fees
$1,025 in costs (including copies and postage)
(Pl. Am. Mot., Docket Item 85, at 14).

[3] Though this Court vacated entry of default against Defendant Hannah, at Hannah's request, on September 25, 2007, Hannah remains in default, having never responded to any of Plaintiff's pleadings, and so the Court will order the Clerk of Court to enter default against him.

908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotations omitted) (citing Thomson v. Wooster, 114 U.S. 104 (1885)).  Plaintiff must still offer some proof of damages.  Fed. R. Civ. P. 55(b)(1) & (2); Comdyne, 908 F.2d at 1149.  Once a plaintiff has met the prerequisites for default judgment -- entry of default and proof of damages -- the question of whether or not to enter a default judgment "is left primarily to the discretion of the district court."  Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984)

### A. Whether Default Judgment Against Hannah is Warranted

"Before imposing the extreme sanction of default [judgment], district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."  Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987)).  The Court finds, as will be discussed below, that default judgment against Defendant Hannah is warranted in the present action.

The Court will address the second and third prongs of the default judgment analysis first, because they are relatively easy to resolve in the present case, and both point strongly in favor of entry of default judgment.  Defendant Hannah's conduct has been highly culpable and it has greatly prejudiced Plaintiff.  Over four years of litigation, Hannah has not only failed to

10

respond to Plaintiff's pleadings, motions, and requests for discovery, but he has consistently ignored the orders of this Court and the Magistrate Judge.  Hannah is an attorney and has chosen to represent himself, so his willful disobedience cannot be ascribed to counsel or to a layperson's ignorance of the law.  Hannah's refusal to participate in this action -- an action of which he is well-aware, as evidenced by his occasional appearances in this case -- has prolonged this litigation and delayed Plaintiff an ultimate outcome, good or bad, on his claims.  Moreover, as will be explained below, Hannah's defiance of Plaintiff's requests for discovery and the Magistrate Judge's orders has impeded Plaintiff's ability to pursue his claims against those responsible for the March 23, 2003 incident.  Given that the Court and the Magistrate Judge have provided Hannah with multiple opportunities to correct his default status and defend himself, Hannah's own culpable conduct and the harm it has caused Plaintiff support entry of default judgment in this case.  Nor would any other sanction be appropriate or, given Hannah's history, effective.

As to the first element of default judgment analysis, which turns on the merits of Plaintiff's claim against Defendant Hannah, the Court finds that Defendant Hannah has no meritorious defense.  To prove a claim for legal malpractice in New Jersey, Plaintiff Malik must demonstrate "'(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate

11

causation.'" Conklin v. Hannoch Weisman, 678 A.2d 1060, 1070 (N.J. 1996) (quoting Lovett v. Estate of Lovett, 593 A.2d 382, 386 (N.J. Super. Ct. Ch. Div. 1991)). As discussed, the Court has already found that Hannah breached his duty of reasonable legal representation that he owed to Plaintiff, Malik, 2008 WL 906353, at *3,[4] and the Court will now find that Plaintiff has established, based on his presumed true allegations, that Hannah was the proximate cause of his harm.

Under New Jersey law, proximate cause may be "defined as 'any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" Garrison v. Twp. of Middletown, 712 A.2d 1101, 1114 (N.J. 1998). As this Court has previously explained, in order to receive relief for Hannah's malpractice, Plaintiff must show that there are defendants against whom he cannot be successful now because of Hannah's negligence. Malik, 2008 WL 906353, at *3. Plaintiff

---

[4] In particular, the Court found that Hannah's failure to pursue Plaintiff's civil rights action within the statute of limitations and his false assurances that a complaint had been filed constituted legal malpractice. Malik, 2008 WL 906353, at *3. In this motion, Plaintiff clarified that Defendant Hannah specifically promised to investigate the March 23rd incident and failed to investigate, or failed to provide Hannah with the results of his investigation. These allegations are presumed to be true and also constitute legal malpractice. Though it was unclear from Plaintiff's earlier motions that this failure to investigate is an element of Plaintiff's claims against Hannah, it is clear from Plaintiff's interrogatories, dated May 22, 2007 [Docket Item 47 at 18-25], that Hannah's investigation or failure to investigate has been an element of Plaintiff's malpractice claim.

12

now clarifies that in addition to failing to timely file Plaintiff's complaint, Hannah failed to investigate the March 23rd incident as promised (or failed to provide Plaintiff with the results of his investigation).  Accepting Plaintiff's allegations as true, the Court finds it more probable than not that as a result of Hannah's failure to investigate the matter as promised (so that Plaintiff had no reason to investigate himself) over the two years that he represented Plaintiff, Plaintiff was unable to file a timely complaint naming the individuals responsible for the March 23rd attack, and that such a complaint would have been successful.

Hannah's failure to engage in even the most basic investigation (or failure to give Plaintiff the results of his investigation) naturally and continuously produced the result that Plaintiff was unable to pursue a successful claim against the individual wrongdoers.  A preliminary investigation of the incident, by requesting police reports related to the arrest of Stanley Crump, would have timely identified the arresting officers who entered Plaintiff's home and engaged in the attack.  Assuming his allegations to be true, the officers entered his home without a warrant and beat him without cause, in violation of his Fourth Amendment rights.  Had Plaintiff identified the individual culpable officers in his initial complaint, his claims against those individuals would have been successful.  See Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (finding excessive force as a matter of law where there was no evidence that

13

plaintiff "was resisting arrest or attempting to flee"); United States v. Acosta, 965 F.2d 1248, 1258 (3d Cir. 1992) ("An arrest warrant does not give officers the authority to enter the home of a third person to execute the warrant; usually a search warrant for such a residence is required."). Instead, Plaintiff was forced to quickly prepare a complaint without the benefit of any investigation, all after the two-year statute of limitations for deprivation of rights under § 1983 had expired. He could only guess at the responsible bodies.

Since filing his first amended complaint against Camden County, Plaintiff has attempted to obtain information about the March 23rd incident through the discovery process and Hannah has thwarted his efforts. In his May 22, 2007 interrogatories and request for production of documents prepared and served on Hannah (while Hannah was the only party in this litigation), Plaintiff requested all information Hannah collected during his supposed investigation, including police reports of the March 23rd incident. Defendant Hannah never responded, despite two court orders directing him to serve responsive answers. As a consequence, Hannah's present default has prevented Plaintiff from correcting Hannah's past negligence, making Hannah's misconduct the direct cause of Plaintiff's present inability to present successful, timely claims against the individuals responsible for the March 23rd incident. Hannah, through continued indifference to his obligations under the legal process, remains in default and has compounded his damage to his

former client. Plaintiff having shown that Hannah's legal malpractice was the proximate cause of his inability to bring certain successful claims, and Defendant Hannah having failed to offer any defense to Plaintiff's malpractice action, the first prong, like second and third, of the default judgment analysis supports entry of default judgment.

All three prongs support entry of default judgment and so the Court will enter such a judgment against Defendant Hannah.[5]

---

[5] Plaintiff is entitled to default judgment against Hannah under a second, alternate route, namely, for Hannah's repeated refusals to provide court-ordered discovery, pursuant to Rule 37(b)(2)(A)(vi), Fed. R. Civ. P. Where a party "fails to obey an order to provide or permit discovery," the court may enter an order "rendering default judgment against the disobedient party," Rule 37(b)(2)(A)(vi). Upon Plaintiff's motion, the Court compelled Hannah to provide discovery responses by March 20, 2008 (Order filed February 20, 2008, Docket Item 54) and to serve responsive answers to all discovery requests by July 16, 2008 (Order filed June 11, 2008, Docket Item 71). The latter Order also dealt with Hannah's professing that he had not received the earlier discovery request, and it directed Plaintiff to re-serve another set of the requests upon Hannah, which Plaintiff promptly did by certified mail, as confirmed by Plaintiff's Notice of Compliance filed August 12, 2008 (Docket Item 72). Hannah again did nothing to comply with the Order.

In considering whether violation of discovery orders should result in the sanction of default judgment, the Court examines the six factors identified by the Court of Appeals in <u>Poulis v. State Farm Fire & Casualty Co.</u>, 747 F.2d 863, 868 (3d Cir. 1984):

> (1) the extent of the party 's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

(continued...)

### B.     Amount of Damages

The Court having found that default judgment is appropriate, it must now calculate damages.

> The district court has considerable latitude in determining the amount of damages. <u>Jones v. Winnepesaukee Realty</u>, 990 F.2d 1, 4 (1st Cir. 1993). In determining the amount, the district court may conduct a hearing. Fed. R. Civ. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.</u>, 109 F.3d 105, 111 (2d Cir. 1997). "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." <u>Pope v. United States</u>, 323 U.S. 1, 12 [](1944).

---

[5](...continued)

See <u>Comdyne</u>, 908 F.2d at 1147-49 (affirming entry of default judgment based on defendants' defiance of discovery orders). Upon this unopposed motion, the Court has nonetheless considered each factor and finds: (1) the noncompliance is entirely Hannah's personal responsibility; (2) Plaintiff has been prejudiced by being unable to move his case ahead or identify the involved police officers; (3) Hannah has been totally and ineffably dilatory in failing to file answers to the pleadings and failing to respond to these reasonable discovery requests; (4) Hannah's conduct exhibits willfulness and bad faith, such as by failing to communicate further with the Court even after the prior default was lifted so that he could file opposition to summary judgment; (5) no alternative sanctions less than dismissal would redress Hannah's continued indifference; and (6) the Court is unaware of any reason why Hannah failed to perform his obligations to Plaintiff in a professional manner when he had agreed to do so and permitted the limitations period to expire without action; similarly, as to the case-within-a-case, the Court is unaware of any defense Hannah might have had to the legitimacy of Plaintiff's underlying civil rights claim. Accordingly, default judgment is also appropriately entered herein under Rule 37(b)(2)(A)(vi).

IBEW Local Union No. 102 v. Dane Const. Co., LLC, No. 08-907, 2009 WL 872018, at *2 (D.N.J. Mar. 30, 2009).

The damages at issue in this case-within-a-case are those that Plaintiff would have received had he been able to bring suit against the presently unnamed individual officers responsible for the warrantless entry into Plaintiff's home and the unlawful beating based upon the facts Plaintiff proffers in his pleadings and his declaration. The one certain amount in this case is the cost of Plaintiff's medical costs, which according to his most recent motion amounted to $12,452.59. (Pl. Am. Mot., Docket Item 85, at 14.) In addition, Plaintiff has estimated that he suffered $7,000 to $8,000 in property damage and $75,000 in lost wages. (Id.) Plaintiff requests approximately $2,000,000 in pain and suffering due to the incident.[6] (Id.) Finally, Plaintiff asks for litigation costs totaling $4,400. (Id.)

For the reasons below, the Court will award Plaintiff his medical costs, litigation costs, and a portion of his requested damages for destroyed property and pain and suffering – all amounts Plaintiff would have received had he been able to sue the individual responsible police officers. Plaintiff's declaration provides sufficient support for this judgment. His medical costs, as discussed, are a sum certain, and are easily calculated

---

[6] Plaintiff makes additional separate requests for one or two million dollars for "lost claims" against the individual police officers and Camden County. Such a double recovery is not permissible here, because Plaintiff's medical expenses, property damage, lost wages, and pain and suffering are the total of his lost recovery in his claims against the officers and the County.

17

and awarded in full at $12,452.59. His alleged litigation costs totaling $4,400 are recoverable only if such costs are available under 28 U.S.C. § 1920, which is limited to filing fees, certain transcript and expert witness fees and copying fees charged by the Clerk's Office. Of these, Plaintiff has incurred only a filing fee of $250 (see Docket Item, unnumbered, August 22, 2005), which will be awarded to Plaintiff. Plaintiff's request for property damage is not based on a sum certain, but the Court finds based on Plaintiff's detailed second amended complaint, supported by Plaintiff's sworn declaration, that due to police conduct on March 23rd Plaintiff was forced to replace several doors and lost some furniture. Without more detail than this, the Court cannot award Plaintiff the full $8,000 he requests, but the Court finds that Plaintiff has provided sufficient proof to support a property damages award of $2,000.

   Pain and suffering is a more complicated calculation, but the Court is satisfied that it can make this calculation based on the present record. According to Plaintiff's evidence, police charged into Plaintiff's home, woke him and his family, restrained him, and then repeatedly kicked in the head and back without cause. The attack required a brief trip to the hospital, where he was treated for cuts and bruises and a twisted neck and back and received a neck brace. It does not appear that Plaintiff required any further medical attention. Plaintiff believes that the incident has led to his current regular headaches as well as a permanent back injury, though neither

conclusion appears to be supported by a medical diagnosis.  With these facts in mind, the Court finds that had Plaintiff filed suit against the individual officers, he would have received $30,000 for the pain and trauma he endured on March 23rd, as well as some continuing pain and suffering due to that incident.

The Court will not award Plaintiff damages for lost wages, finding these requests unsupported by evidence and speculative. Plaintiff alleges that he lost his job at Catelli Brothers due to his injuries from the March 23rd accident, but he has not provided the Court with any information regarding his hourly wage and take-home pay.  Plaintiff has had four years to provide this information to the Court, and has submitted a motion for summary judgment along with two motions for default judgment in which this information should have been provided.  The Court will not provide Plaintiff with another opportunity to submit evidence (which does not require a hearing, but is better suited to an affidavit or other documentary evidence).  Moreover, by August of the following year Plaintiff was incarcerated, and he remains incarcerated, preventing him from earning any significant income. Without sufficient basis in the record, the Court declines to award Plaintiff damages for lost wages.

In sum, the Court will award Plaintiff $12,452.59 in medical expenses, $2,000 for property damage, $30,000 for pain and suffering, and $250 for litigation costs, bringing his recovery from Defendant Hannah to $44,702.59.  In addition, the Court will add prejudgment interest in tort, which is available under New

19

Jersey Law, N.J. Ct. R. 4:42-11(b), from the date of Plaintiff's filing on August 4, 2005, until the present.  The annual rates of interest for this time period were: 1.0% for 2005; 2.0% for 2006; 4.0% for 2007; 5.5% for 2008; and 4.0% for 2009, which yield the following amounts respectively: $149.01 (partial year), $894.05, $1,788.10, $2,458.64, and $1,341.08 (partial year), for a total prejudgment interest of $6,630.88.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motions for default judgment against Defendant Hannah and will award a judgment of $51,333.47, including prejudgment interest. The accompanying Default Judgment shall be entered.


**September 24, 2009**                              **s/ Jerome B. Simandle**
Date                                                Jerome B. Simandle
                                                    U.S. District Judge