IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABDUS SALAAM MALIK, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | CIVIL NO. 05-3901 (JBS/JS) |
| LEWIS HANNAH, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Abdus Salaam Malik
#40863-050
Allenwood Low Security Correctional Facility
P.O. Box 1000
White Deer, PA 17887
        Plaintiff appearing pro se

Mark Cieslewicz, Esq.
OFFICE OF THE CITY ATTORNEY
City Hall
4th Floor - Suite 419
P.O. Box 915120
Camden, NJ 08101
        Counsel for Defendant City of Camden


**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This matter comes before the Court on the motion for summary judgment of Plaintiff Abdus Salaam Malik.  [Docket Item 126.] Because of Defendant City of Camden's procedural default, there are no material disputes of fact in the record.  Consequently, the Court will grant Plaintiff's motion for summary judgment as

to Defendant's liability for its officers' conduct.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from Plaintiff's statement of undisputed facts and supporting affidavits, submitted in accordance with Local Civil Rule 56.1.  Because Defendant City of Camden failed to furnish, with its opposition papers, a responsive statement of material facts in accordance with L. Civ. R. 56.1(a), the Court deems all properly supported facts in Plaintiff's statement to be undisputed for the purposes of this motion.  See Handron v. Sebelius, 669 F. Supp. 2d 490, 492 (D.N.J. 2009) (holding that where "non-movant fails to supply the counter Rule 56.1 statement altogether, the court can treat all properly supported facts by the movant as uncontroverted.").

At approximately 5:00 a.m. on March 28, 2003, Sergeant John Sosinavage, Detective Richard Dayton, and Detective Christopher Frucci, of the Camden Police Department, entered Plaintiff's home at 541 Grant Street in Camden with an arrest warrant for an individual named Stanley Crump, believed to be staying in the house.  (Malik Aff. ¶ 1, Pl.'s Ex. 5; Stratton Aff. ¶ 2, Pl.'s Ex. 4; Def.'s Resp. to Req. for Admis. ¶ 3.)  They identified, arrested, and restrained Mr. Crump immediately upon entering the house in the kitchen of the building's ground floor.  (Malik Aff. ¶¶ 4-5.)  While they were restraining Mr. Crump, they reportedly

2

"heard movement on the second floor of the dwelling."
(Sosinavage Report, Pl.'s Ex. 3.)  They then proceeded upstairs
in the house to search the rest of the house "for additional
conspirators."  (Id.)

The officers, with guns drawn, forcefully entered
Plaintiff's bedroom where he and his domestic partner, Selma
Stratton, were sleeping.  (Stratton Aff ¶ 6.)  The officers threw
Plaintiff to the floor and restrained him, whereupon they kicked
him three times.  (Id. ¶ 8, Malik Aff. ¶ 13.)  Plaintiff had not
provoked the officers prior to being forcibly restrained.  (Id.)
Plaintiff and the rest of his family, who had also been sleeping
in bedrooms upstairs, were then led downstairs by the officers.
(Malik Aff. ¶ 14.)  The officers, after identifying Plaintiff,
explained that they had entered the house based on an arrest
warrant for Stanley Crump, and attempted to intimidate Plaintiff
by threatening to plant evidence of drugs in his house.  (Id. ¶¶
22-23.)  Plaintiff had been injured as a result of the police
officers' actions, so the officers thereafter drove Plaintiff to
the hospital, where he was treated for his injuries.  (Id. ¶¶ 24-
26, Stratton Aff. ¶ 9.)  Plaintiff's injuries were sufficiently
severe as to prevent him from working, causing him to lose his
job.  (Malik Aff. ¶¶ 34-35.)

After Plaintiff was treated at the hospital, he submitted a
complaint with the Internal Affairs division of the Camden Police

Department.  (Malik Aff. ¶ 31.)  The Internal Affairs division conducted an investigation into the complaint, which consisted solely of requesting that Sgt. Sosinavage, one of the officers accused by Plaintiff in his internal affairs complaint, draft a statement of the incident.  (Def.'s Resp. to Interrogatories ¶ 1, Pl.'s Ex. 2; Def.'s Resp. to Request Documents ¶ 1, Pl.'s Ex. 1.) Plaintiff has attached Sgt. Sosinavage's two-page, unsworn statement with his motion papers.  (Sosinavage Report, Pl.'s Ex. 3.)

Plaintiff states in his statement of uncontested facts that Defendant City of Camden's police department, under the direction of its policymaker the Chief of Police in March of 2003, exhibited a "pattern of municipal toleration of abuses by the Camden Police Department, including violations of excessive force. . . ."  (Pl.'s Stmt. Materal Facts, ¶ 16.)  This uncontested statement is supported by several uncontested facts.

Plaintiff has submitted documents demonstrating that his encounter with Camden police officers was not unusual.  Records indicate that both Sgt. Sosinavage and Detective Dayton had been the subject of multiple prior complaints of excessive force or assault prior to their encounter with Plaintiff on March 28, 2003.  (Def.'s Resp. to Interrogatories ¶ 17; Pl.'s Ex. 3.) Detective Dayton's record (or "Index Card" in the terminology of the Camden Police Department Internal Affairs), for example,

4

contains six complaints of excessive force or assault in the years 1998 and 1999 alone, all of which were resolved by Internal Affairs as either "unfounded" or "exonerated." (Pl.'s Ex. 3.) However, of the three officers involved in Plaintiff's complaint, none of the officers' records include any mention of Plaintiff's complaint. (Id.) In the five years prior to Plaintiff's incident, the Defendant's Internal Affairs division records show an excess of 300 citizen complaints of excessive force or false arrest by Camden police officers. (Def.'s Resp. to Interrogatories ¶ 15.)

Plaintiff also includes uncontested evidence that less than two weeks prior to his violent encounter with Camden police officers, on March 17, 2003, (then) State Attorney General Peter Harvey ordered (then) County Prosecutor Vincent P. Sarubbi "to supersede the Chief of Police and assume all responsibilities for the management and operation of the Camden Police Department." (Def.'s Resp. to Interrogatories ¶ 8.)

The sole remaining defendant in this action is the City of Camden. Plaintiff argues that the City's actions, specifically its failure to adequately train its police officers and custom of ignoring constitutional violations committed by its police officers, caused the violations of constitutional rights that he suffered, resulting in his injuries.

Plaintiff filed his motion for summary judgment on September

5

27, 2010, which was received by the Court on October 1, 2010. [Docket Item 126.]  Pursuant to Local Civil Rule 78.1(a) and the Clerk of Court's published schedule of motion days, opposition was due on October 18, 2010.  Defendant's opposition was filed, instead, 29 days late on November 16, 2010, lacking a responsive statement of undisputed material facts as required by L. Civ. R. 56.1(a). [Docket Item 127.]  In fact, Defendant's five-page letter brief in opposition to the motion lacked any factual evidence supporting its denials of the facts contained in Plaintiff's statement of uncontested facts.  Plaintiff filed a reply brief on November 29, 2010, which was received by the Court on December 2, 2010. [Docket Item 128.]  The motion is therefore fully briefed and ripe for decision.

## III. DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over

6

irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  Under Local Civil Rule 56.1(a), once a moving party has properly submitted a statement of undisputed material facts, the nonmovant must supply with its opposition papers

> a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

L. Civ. R. 56.1(a).  Merely stating in the opposition papers that the non-movant disputes in general many of the facts put forward by the movant, without identifying the facts disputed and without pointing to evidence in the record that raises an issue of fact regarding that point, is insufficient to survive summary judgment.  Here, Defendant City of Camden has not merely engaged

in technical non-compliance with Local Civil Rule 56.1.  Instead,
Defendant has identified no evidence raising a material dispute
of fact as it is required to do under 56(c) and (e), Fed. R. Civ.
P.

However, the Court will view any evidence in favor of the
nonmoving party and extend any reasonable favorable inferences to
be drawn from that evidence to that party.  Hunt v. Cromartie,
526 U.S. 541, 552 (1999).  See also Scott v. Harris, 550 U.S.
372, 378 (2007) (The district court must "view the facts and draw
reasonable inferences in the light most favorable to the party
opposing the summary judgment motion.")

### B.  Monell Liability

Plaintiff seeks relief against Defendant City of Camden
pursuant to 42 U.S.C. § 1983, which provides, in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State . . . subjects, or causes to be
> subjected, any citizen of the United States .
> . . to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law . . . .

42 U.S.C. § 1983.  It is well established that municipal
liability under § 1983 "may not be proven under the respondeat
superior doctrine, but must be founded upon evidence that the
government unit itself supported a violation of constitutional
rights."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)
(citing Monell v. New York City Dep't of Soc. Servs., 436 U.S.

8

658 (1978)).  As a consequence, a municipality is liable under §
1983 only when "execution of a government's policy or custom,
whether made by its lawmakers or by those whose edicts or acts
may fairly be said to represent official policy, inflicts the
injury." Monell, 436 U.S. at 694; Pembaur v. City of Cincinnati,
475 U.S. 469, 483 (1986) (plurality opinion) ("[M]unicipal
liability under § 1983 attaches where--and only where--a
deliberate choice to follow a course of action is made from among
various alternatives by the official or officials responsible for
establishing final policy with respect to the subject matter in
question.")

The Third Circuit has neatly defined "policy" and "custom"
for the purposes of municipal liability.

> A policy is made "when a decisionmaker
> possess[ing] final authority to establish
> municipal policy with respect to the action
> issues a final proclamation, policy or edict."
> Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d
> Cir.1996) (quoting Pembaur, 475 U.S. at 481).
> A custom is an act "that has not been formally
> approved by an appropriate decisionmaker," but
> that is "so widespread as to have the force of
> law." [Bd. of County Comm'rs of Bryan County
> v. Brown, 520 U.S. 397, 404 (1997)].

Natale v. Camden County Correctional Facility, 318 F.3d 575, 584
(3d Cir. 2003).  Either one must be tied to the responsible
municipality.

> There are three situations where acts of a
> government employee may be deemed to be the
> result of a policy or custom of the
> governmental entity for whom the employee

9

works, thereby rendering the entity liable
under § 1983. The first is where the
appropriate officer or entity promulgates a
generally applicable statement of policy and
the subsequent act complained of is simply an
implementation of that policy. The second
occurs where no rule has been announced as
policy but federal law has been violated by an
act of the policymaker itself. Finally, a
policy or custom may also exist where the
policymaker has failed to act affirmatively at
all, though the need to take some action to
control the agents of the government is so
obvious, and the inadequacy of existing
practice so likely to result in the violation
of constitutional rights, that the policymaker
can reasonably be said to have been
deliberately indifferent to the need.

Id. (internal punctuation and citations omitted). Whether a

policy or a custom, "The plaintiff must also demonstrate that,

through its deliberate conduct, the municipality was the 'moving

force' behind the injury alleged." Bd. of County Comm'rs, 520

U.S. at 404.

Thus, Plaintiff's burden on the instant motion for summary

judgment is to demonstrate that no material issue of fact exists

regarding whether (1) he suffered a deprivation of his rights

under the Constitution or the laws of the United States, and (2)

the Defendant City of Camden was the moving force behind the

deprivation due to a policy or custom that, if not necessarily

formally approved by the decisionmaker, was so widespread as to

have the force of law.

## C. Plaintiff's Deprivation of Rights

Plaintiff argues that no issue of material fact exists

10

regarding the question of whether his constitutional rights were violated by Camden police officers in his home on March 28, 2003. Plaintiff asserts that his Fourth Amendment right to be secure against unreasonable searches or seizures of his person was violated in at least two ways: (1) that the police officers' search of the second floor of Plaintiff's house and entry into his bedroom, after the officers had completed their arrest and restraint of Stanley Crump on the first floor of the house, was an unreasonable search in violation of the Fourth Amendment; and (2) even if the officers' restraint of Plaintiff was not unlawful in itself, their use of force was excessive, also in violation of the Fourth Amendment.

Defendant City of Camden responds that Plaintiff's Fourth Amendment rights were not violated because its officers' search and subsequent seizure of Plaintiff in his bedroom were undertaken as part of a "protective sweep" pursuant to the officers' arrest of Mr. Crump.  Citing Maryland v. Buie, 494 U.S. 325 (1990), Defendant argues that under the undisputed fact that the Officers had already lawfully entered Plaintiff's house on an arrest warrant, they were authorized to conduct a protective sweep of the rest of the house to "assure themselves that the house . . . [was] not harboring other persons who are dangerous and who could unexpectedly launch an attack."  Buie, 494 U.S. at 333.

The Court concludes that based on the admissible facts in
this case, the officers were not authorized to search the
upstairs bedrooms and, subsequently, restrain the Plaintiff.  The
Supreme Court has held that "arresting officers are permitted in
such [limited] circumstances to take reasonable steps to ensure
their safety after, and while making, the arrest."  Id.  However,
the Supreme Court carefully limited the scope of a warrantless
"protective sweep" incident to an arrest in a house.

> [A]s an incident to the arrest the officers
> could, as a precautionary matter and without
> probable cause or reasonable suspicion, look
> in closets and other spaces immediately
> adjoining the place of arrest from which an
> attack could be immediately launched.  Beyond
> that, however, we hold that there must be
> articulable facts which, taken together with
> the rational inferences from those facts,
> would warrant a reasonably prudent officer in
> believing that the area to be swept harbors an
> individual posing a danger to those on the
> arrest scene.

Id. at 334.

In the instant case, there is no admissible evidence which
would raise an issue of fact suggesting that the actions of
Defendant's police officers were within the scope permitted in
Buie.  A protective sweep under Buie falls into one of two
categories: (1) suspicionless searches of the areas immediately
adjacent to the place of arrest; or (2) a wider search of the
rest of the dwelling based on reasonable suspicion derived from
articulable facts.  The Court concludes that no admissible

12

evidence supports a finding that the search of Plaintiff's
bedroom falls into either.

The arrest of Mr. Crump took place in the kitchen on the
main floor of the building; thus the only areas in which
Defendant's officers could have searched without suspicion were
those areas "immediately adjoining the place of arrest from which
an attack could be immediately launched."  Instead, Defendant's
officers searched far beyond the immediate area, including
searching upstairs and in closed bedrooms.  Thus, Defendant's
officers could not have conducted a suspicionless search of the
upstairs bedrooms on these facts under Buie.

However, Buie also authorizes a search beyond the immediate
area, provided that the officer has a reasonable suspicion of
danger.  Thus, in the instant case, the officers' search of the
upstairs bedrooms might have been permitted under Buie if there
were evidence in the record suggesting such reasonable suspicion.
To support such a claim, Defendant can point only to the Internal
Affairs statement drafted by Sgt. Sosinavage to provide such a
claim.  In that unsworn statement, Sgt. Sosinavage reports that
the arrest of Mr. Crump was being conducted simultaneously with
that of several other co-conspirators in a "drug/murder
conspiracy investigation."  (Sosinavage Rept. 1.)  Sgt.
Sosinavage also reported that while the officers were restraining
Mr. Crump, they "heard movement" coming from the upstairs.

13

Were Defendant's evidence contained in an affidavit or other admissible form, the Court might consider the facts contained therein.  However, Sgt. Sosinavage's unsworn statement is hearsay under Fed. R. Ev. 802.  Defendant makes no argument that the unsworn statement fits within any exception to the hearsay rule of Fed. R. Ev. 803.  Consequently, the Court finds no admissible evidence in the record that would permit a factfinder to conclude that the police officers had a reasonable suspicion, based on articulable facts, that the upstairs bedrooms contained individuals posing a danger to the arresting officers.  See Fowler v. Borough of Westville, 97 F. Supp. 2d 602, 608 (D.N.J. 2000) (holding that unsworn statements otherwise inadmissible as evidence fail to raise a material issue of fact sufficient to oppose summary judgment) (citing Small v. Lehman, 89 F.3d 762, 765 n.5 (3d Cir. 1996) overruled on other grounds by Boerne v. Flores, 521 U.S. 507 (1997)).

Therefore, the Court concludes that no dispute of fact exists over whether Plaintiff's Fourth Amendment rights were violated by Defendant's officers on March 28, 2003 in their search of the bedrooms in his house.

Alternatively, even if the Court were to find that material facts were in dispute on whether the search was a permissible "protective sweep," the Court additionally concludes that no dispute of fact exists that the officers used excessive force

while restraining Plaintiff in his bedroom, in violation of his
Fourth Amendment rights.  Plaintiff has offered uncontested
testimony that the officers kicked in his bedroom door, that he
offered no resistence to them, that they restrained him for no
reason, and that they kicked him three times after having
restrained him, causing injuries sufficient to require medical
attention.  Defendant, in opposition, states merely that it
"disputes" these facts, but offers no evidence in support of its
denial.  Defendant has simply not bothered in the years of this
lawsuit to gather admissible evidence disputing Plaintiff's claim
of excessive force.

The Court concludes that no reasonable factfinder could
conclude on these undisputed facts that the officers' use of
force in restraining Plaintiff (even if the restraint were
justified under the Fourth Amendment, which this Court has found
it was not) was a reasonable use of force.  The Supreme Court has
articulated that a factfinder's determination of whether an
authorized use of force is unconstitutionally excessive should
turn on the particular facts of each case, "including the
severity of the crime at issue, whether the suspect poses an
immediate threat to the safety of the officers or others, and
whether he is actively resisting arrest or attempting to evade
arrest by flight."  Graham v. Connor, 490 U.S. 386, 396 (1989).
In the instant case, Plaintiff had committed no crime, and at

15

most was being questioned merely to ascertain his identity; Plaintiff posed no threat to the safety of the officers or others; and Plaintiff was not resisting arrest or attempting to evade arrest.  The Court therefore concludes that the force employed by the Defendant's officers was excessive in violation of Plaintiff's Fourth Amendment rights.

Because the Court has concluded that the fact is not in dispute that Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure was violated, the Court will enter an order finding as such and treating that fact as established in the case.  What remains for Plaintiff to recover against Defendant City of Camden under Section 1983 is to determine whether this violation of Plaintiff's rights was caused by a custom or policy of the Defendant.

### D.  Evidence of Policy or Custom

Plaintiff additionally argues that the evidence in the record demonstrates that no dispute of fact exists over whether Defendant had a policy or custom of tolerating the use of excessive force that caused Plaintiff's rights to be violated, as required under <u>Monell v. Dep't of Social Svcs.</u>, 436 U.S. 658 (1978).  In support of this contention, Plaintiff points to the fact that Defendant has not contested the statement that the Camden Chief of Police created or acquiesced to a pattern of tolerating constitutional abuses by the city's police officers.

16

Plaintiff is correct that Defendant City of Camden has come forth
with no admissible evidence opposing Plaintiff's evidence of
Camden's custom and policy in 2003 of essentially ignoring
citizen complaints of excessive use of force by its police
officers.  Camden's nonchalant approach to defending its case has
been shown at several earlier points on the docket, requiring
court intervention.  (See, e.g., Docket Item 105, Order of Dec.
30, 2009 compelling Camden to respond to Plaintiff's written
discovery requests by Jan. 25, 2010; Docket Item 107, Order of
Feb. 19, 2010 compelling Camden to show cause for non-compliance
with Dec. 30, 2009 Order; Docket Item 125, Order of Aug. 25, 2010
granting Plaintiff's motion to compel discovery but denying
sanctions.)  Presently, Camden has had a full opportunity to
submit admissible evidence opposing Plaintiff's summary judgment
motion, and to contest Plaintiff's statement of Uncontested
Material Facts under L. Civ. R. 56.1, but has not done so.[1]

Plaintiff supports his uncontested statement that a custom
existed through three categories of uncontested that the Court
finds are sufficient to justify the entry of summary judgment in
Plaintiff's favor.

---

[1] This Court explicitly does not consider whether Camden's
spotty compliance with discovery obligations should result in
sanctions, such as under Rule 37(b)(2), Fed. R. Civ. P.  This
history of Camden's delay is mentioned only to place its current
undeveloped opposition to the instant motion for summary judgment
into context.

First, Plaintiff points to the fact that one of the officers who violated his Fourth Amendment rights was assigned the task of investigating Plaintiff's internal affairs complaint of the encounter.  This investigation by an interested party is the equivalent of no investigation.  The officers in question had lengthy histories of citizen complaints of abuse or assault, but the investigation into Plaintiff's complaint was never even recorded on any of the officers' index cards, indicating a faulty system of tracking and correcting constitutional abuses on the part of the police department and its policymaker.  The Court finds that this evidence tends to support Plaintiff's assertion that the Defendant had a custom or policy of ignoring its officers' misconduct and violations, uncontested by Defendant, or performing sham investigations of citizens' complaints of excessive force.

Second, Plaintiff points to the facts in the record demonstrating that a large number of such citizen complaints (more than 300) were filed against other police officers in the department in the years prior to Plaintiff's injury.  The Court finds that this evidence also supports Plaintiff's uncontested statement that Defendant had a custom of ignoring such violations, as such a high number of complaints would have put the policymaker on notice of the existence of such violations or the possibility of their existence.  The evidence indicates that

18

the Department's custom of ignoring when its officers violated the rights of citizens was so widespread as to have the force of law, thereby indicating that the municipality itself was the moving force behind Plaintiff's injury.  Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997).

Finally, Plaintiff argues that the Court can take judicial notice of particular reasons for the Attorney General's transfer of authority over the police department from the Chief of Police to the Camden County Prosecutor on March 17, 2003.  Specifically, Plaintiff argues that the Court can take notice that the transfer reflected a statewide concern about the abuses of which Plaintiff is complaining.

Federal Rule of Evidence 201(b) authorizes the Court to take judicial notice of facts "not subject to reasonable dispute" and categorizes facts amenable to judicial notice as those "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Ev. 201(b).

The Court concludes that the reasons that the State Attorney General appointed the Camden County Prosecutor as managing authority over the police department in 2003 do not fall within this relatively narrow field of facts of which the Court can take judicial notice.  See Buczek v. Continental Cas. Ins. Co., 378

F.3d 284, 291 n.4 (3d Cir. 2004) (finding fact of the frequency that winds reach ninety miles-per-hour along the New Jersey shore is not one that is appropriate for judicial notice because not all authoritative sources agree).  Consequently, the fact of the Attorney General's transfer of authority, standing alone, would be insufficient to demonstrate that Defendant had a policy or custom that caused Plaintiff's injuries.  It would suffice to show, however, that at the time of Malik's encounter with these officers, the City of Camden's Police Department, including its internal controls, was in substantial disarray requiring an extraordinary intervention by the State of New Jersey.  In this case, however, the Court need not take judicial notice of the fact of the existence of a custom of toleration of constitutional abuses by Defendant City of Camden in March of 2003 that was caused by the City's former Chief of Police, because it is uncontested by Defendant and properly supported by evidence in the record.

Therefore, the Court concludes that the record establishes that the Defendant had a policy or custom sufficient to establish Monell liability in this case of indifference to complaints of excessive police force, thereby entitling Plaintiff to a judgment as a matter of law that Defendant City of Camden caused his injuries and violated his constitutional rights under color of state law in violation of 42 U.S.C. § 1983.  The Court will,

therefore enter judgment in favor of Plaintiff on the issue of liability and set the question of compensatory[2] damages stemming from the excessive use of force for trial.

## IV.   CONCLUSION

Plaintiff has presented uncontested evidence establishing that Camden police officers violated his Fourth Amendment rights in his home on March 28, 2003.  Additionally, Plaintiff has presented uncontested evidence establishing that the City of Camden, through its Chief of Police, caused Plaintiff's Constitutional violation through a custom of ignoring its officers' abusive behaviors.  Consequently, Plaintiff has established his entitlement to judgment as a matter of law as to the Defendant's liability for violating Plaintiff's rights pursuant to 42 U.S.C. § 1983.  The Court must therefore grant Plaintiff's motion for summary judgment as to liability and move the case forward to trial on the issue of compensatory damages. The accompanying Order shall be entered.


June 28, 2011                           s/ Jerome B. Simandle
Date                                    JEROME B. SIMANDLE
                                        United States District Judge

_____

[2] Punitive damages are unavailable against a municipality under 42 U.S.C. § 1983.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 270-71 (1981).

21